SO ORDERED: April 24, 2017.

_____
**Basil H. Lorch III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| In re:  JOHN TODD and ) | Case No. 14-70736-BHL-7 |
| DIANNA TODD, ) | |
| Debtors. ) | |
| _____ ) | |

### ORDER ON DEBTORS' MOTION FOR ORDER OF CONTEMPT

This matter came before the Court on the **Debtors' Motion for Order of Contempt Against the Indiana Department of Workforce Development for Violation of Discharge Injunction** [Docket No. 33] filed on February 17, 2017. The Indiana Department of Workforce Development ("IDWD") filed an **Objection and Response** to the foregoing on March 13, 2017. A hearing was held on March 15, 2017, at which time the parties were given an opportunity to file stipulations and briefs. Based upon the **Joint Stipulations of Fact** filed on March 28, 2017, and having reviewed the pleadings and applicable law, the Court finds that the IDWD did violate the discharge injunction when it proceeded to garnish the Debtor's wages post-discharge.

Stipulated Facts

1. Debtor, John Todd ("Todd") filed multiple claims from time to time between 2009 and 2013 with the IDWD for unemployment insurance benefits payable to individuals who qualify for these benefits pursuant to I.C. §§ 22-4-14-1 through 22-4-16-1.

2. Based on the claims filed, Todd received benefits in the form of payments of money.

3. In February, 2012, a request for investigation was forwarded from the IDWD Benefit Payment Control Section to Investigator, Dennis Patton ("Investigator Patton"), resulting in the opening of an investigative file.

4. The Debtors, John and Dianna Todd ("Debtors"), filed for relief under Chapter 7 on June 5, 2014.

5. IDWD was listed as a creditor on Debtors' case, with a description of "prior to 2014 unemployment overpayment" in the amount of $439.00.

6. IDWD received notice of the filing of the bankruptcy case and of the September 8, 2014 deadline for objecting to discharge.

7. Between approximately June 10, 2014 and July 2, 2014, in accordance with IDWD procedure, Investigator Patton sent and received paperwork to and from Todd's former employers, Enerfab, Inc., J.H. Rudolph & Co., Inc., Sterling Boiler & Mechanical, Inc., and Industrial Contractors, Inc., verifying Todd's employment status and any earnings for weeks in which he also claimed unemployment benefits.

8. In June and July of 2014, in response to a request for information from Investigator Patton, Rosemary Hall, Human Resources Manager for J.H. Rudolph & Co., Inc., Sterling Boiler through its agent, Industrial Contractors through its agent, and Enerfab through its agent, each provided information to Investigator Patton.

9. On July 21, 2014, in accordance with IDWD procedure, Investigator Patton sent Todd a letter for his statement. In that letter, Investigator Patton wrote that "we have information that you may have failed to properly disclose employment and earnings as indicated on the investigator case history worksheets." Todd did not respond to the letter.

10. The Court granted Debtors a discharge on or about September 9, 2014, and the Debtors' case was closed on September 9, 2014.

11. Investigator Patton reviewed employer records and all available evidence and prepared Investigation Case History worksheets dated September 16, 2014, comparing weeks worked with benefits applied for and received by Todd to determine if there had been an overpayment.

12. IDWD sent Todd Determinations of Eligibility ("Determinations") on September 22, 2014.

13. The Determinations noted a Right of Appeal with a note that the Determinations would become final on October 2, 2014, if not appealed by either party.

14. On September 30, 2014, Todd filed a timely appeal of the Determinations.

15. A hearing before an Administrative Law Judge ("ALJ") was scheduled for November 25, 2014. Todd failed to participate in the scheduled appeal hearing.

16. The ALJ mailed a Notice of Dismissal of the appeal on November 26, 2014, which noted that the IDWD's Determinations would become final unless Todd submitted a written request for reinstatement of the appeal within seven days from the mailing date of the Notice.

17. Todd did not file for reinstatement.

18. On or about January 6, 2017, Todd received a "Notice" of Wage Garnishment from IDWD.

19. Shortly thereafter, on or about January 20, 2017, and again on February 4, 2017, Debtors' counsel, Kevin S. Kinkade ("Kinkade"), communicated via email with Deputy Attorney General for the State of Indiana, Megan Binder ("Binder"), regarding this Notice. Kinkade informed Binder, as counsel for IDWD, that IDWD was listed as a creditor in Todd's Chapter 7 bankruptcy case filed June 5, 2014, and discharged September 9, 2014. Kinkade also informed Binder that an adversary complaint regarding the alleged debt owed to IDWD was not filed by the Objection to Discharge deadline set by the Court of September 8, 2014. Binder informed Kinkade that the State's position is that such debts are "post-petition" because Todd filed bankruptcy in June 2014 but the Determinations were not made and mailed until September 2014.

20. On or about February 3, 2017, Todd received a copy of a Wage Garnishment Order issued by IDWD directed to his employer National Seating & Mobility seeking to recover from Todd an "amount due" totaling $16,524.23 for a "delinquent debt."

21. Upon receipt of this wage garnishment order, Kinkade made additional contact with the Office of the Indiana Attorney General and informed the Office of the state of the garnishment.

22. Counsel for the IDWD contacted the IDWD on February 14, 2017, regarding this matter and was informed that as of that date the IDWD had not yet received any garnishment payments.

23. Debtors reopened their case on February 16, 2017, and filed Debtors' Motion for Order of Contempt against the IDWD for Violation of Discharge Injunction. Todd asserted, by and through counsel, that the debt allegedly owed to the IDWD accrued prior to the date of the filing of his joint bankruptcy case and was, therefore, a pre-petition debt.

24. Upon receiving notice of the reopening of the case, counsel for the IDWD informed the IDWD that the bankruptcy had been reopened and any attempts to garnish Todd's wages should be ceased.

25. On March 13, 2017, the IDWD filed an Objection to Debtors' Motion for Order of Contempt asserting that the Determinations did not become final and Todd's debt to the IDWD did not accrue until December 3, 2014, several months after the June 5, 2014 filed for Chapter 7 relief, and thus the debt owed to the IDWD is a post-petition debt due to the IDWD and the wage garnishment order is not a violation of the Discharge Injunction upon creditors with pre-petition debts.

## Discussion

The Debtors contend that the IDWD's actions constitute a violation of the discharge injunction because any alleged debt owed to the IDWD was scheduled and subsequently discharged. The IDWD, on the other hand, argues that the debt arose post-petition, either when it made a Determination of overpayment or when that Determination became final.

Because a debt is simply defined as "liability on a claim", the Court must turn to section 101(5) of the Bankruptcy Code to determine the nature of a claim. In that section, a claim is not simply defined as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right of payment". Instead, the Code elaborates that:

>  (5) The term "claim" means—
>
>    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or
>
>    (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

The legislative history is clear that the above statute was carefully crafted and "[b]y this broadest possible definition [of the term 'claim'] … the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case … [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95-595, at 309 (1977). That language was echoed in *Matter of Rosteck*, 899 F.2d 694, 696 (7th Cir. 1990) (quoting *In re Energy Co-op*, 832 F.2d 997, 1001 (7th Cir. 1987)), and more recently in *In re Udell*, 18 F.3d 403 (7th Cir. 1994).

The IDWD's argument to the contrary is not persuasive. Courts have repeatedly held that a "claim" includes a cause of action or right to payment that has not yet accrued or become cognizable. *See, e.g., In re Rosteck, supra,* (prepetition contract obligation for future condominium assessments was a prepetition claim); *Watson v. Parker (In re Parker)*, 313 F.3d 1267 (10th Cir. 2002), *cert. denied*, 540 U.S. 965, 124 S.Ct. 429, 157 L.Ed.2d 309 (2003) (claim arose when underlying conduct occurred, not when cause of action accrued); *In re Cool Fuel, Inc.*, 210 F.3d 999 (9th Cir. 2000) (tax board had claim even though it had not, as of petition date, taken all steps necessary to bring a collection action); *McSherry v. TWA*, 81 F.3d 739 (8th Cir.

1996) (employee had claim for discrimination based on prepetition events even though she had not yet received a right to sue letter from the investigating agency); *Kilbarr Corp. v. General Servs. Admin. Office (In re Remington Rand Corp.)*, 836 F.2d 825 (3d Cir. 1988) (claim deemed to arise when government has requisite knowledge of its right to payment based on breach of contract even though claim has not accrued under the Contract Disputes Act of 1978).

It is undisputed that the alleged debt arose by virtue of the IDWD's prepetition payment of unemployment benefits to the Debtor, which payments were subsequently found to be improper. The IDWD was listed as a creditor and given notice of the Debtor's bankruptcy filing. As noted in the Stipulated Facts, the IDWD had been investigating Todd for two and half years prior to the bankruptcy filing. The IDWD concluded in writing on July 21, 2014, that Todd "may have received benefits that [he was] not entitled to receive." Despite the fact that the IDWD was on notice that the last date for objecting to discharge of its debt was September 8, 2014, the IDWD neither filed an adversary proceeding objecting to discharge nor requested an extension of the deadline for filing while its investigation was proceeding.

The IDWD correctly asserts that, under the Seventh Circuit's "conduct" test, the date a claim arises corresponds to the date of the conduct giving rise to the claim. *Saint Catherine Hosp. of Indiana, LLC v. Family and Soc. Serv. Admin.*, 800 F.3d 312, 316 (7th Cir. 2015). It goes on to suggest that, in this case, the conduct was not determined until after the debtor filed his petition. That argument, however, misinterprets the rule. The IDWD's position gives primacy to the "determination" rather than the conduct, or even the discovery of conduct, giving rise to the claim. The date of determination, however, is an arbitrary date subject only to the claimant's discretion.

It is instead this Court's opinion that the conduct that gave rise to the claim was the act of obtaining benefits based upon the reporting of incorrect information to the IDWD. Further, the Court finds that the IDWD knew that it had a possible claim before the deadline for objecting to dischargeability had run, and its failure to timely contest dischargeability of that claim resulted in the discharge of the alleged debt.

If the IDWD had not been identified as a claimant, or had no knowledge of Todd's possible fraud until after the deadline for filing complaints, its argument might be more persuasive. But those are not the facts of this case. Based upon the particular circumstances of this case, the Court finds that the IDWD's attempted collection of the discharged debt is a violation of the discharge injunction. Because the violation was willful and knowing, the **Debtors' Motion for Order of Contempt** is hereby **GRANTED**.

The Court therefore **ORDERS AND DIRECTS** the IDWD to repay within thirty (30) days of the entry of this Order any and all monies which were wrongfully garnished from Todd's wages. In addition to that sum, the Court finds that the Debtors should be, and accordingly are, awarded attorney fees in the amount of $1,500.00 plus costs of $260.00, which were incurred as a result of the IDWD's actions.

**SO ORDERED.**

# # #